**TAC REALTY, INC., Appellant,**

**v.**

**The CITY OF BRYAN, Texas, and only in their Official Capacities, Jay Don Watson, Michael M. Beal, Paul Madison, Joe Marin, Mitchell P. Morehead, Boyd Sheffield, and Ernest A. Wentrcek, Appellees.**

No. 14–02–01002–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 20, 2003.

Rehearing Overruled En Banc Feb. 26, 2004.

W. Jeff Paradowski, Bryan, Jonathan S. Day, Charles Hampton, Houston, for appellant.

Michael John Cosentino, Bryan, for appellees.

Panel consists of Justices YATES, HUDSON, and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant TAC Realty, Inc. ("TAC") complains of the trial court's dismissal of its case for lack of subject-matter jurisdiction. In response to TAC's lawsuit seeking temporary and permanent injunctive relief to prevent the City of Bryan ("the City")[1] from spending additional funds in furtherance of certain development agreements executed by the City, the City and the individual defendants filed a plea to the jurisdiction asserting TAC does not have standing to challenge the agreements. The trial court conducted a hearing and sustained the City's plea. In three issues, TAC asks this court to determine (1) whether the trial court committed reversible error by failing to find TAC made a prima facie showing that the development agreements violate article 11, section 5 of the Texas Constitution, the Bryan City Charter and Texas public policy; and

---

1. The individual defendants were sued only in their official capacities in order to effectuate the injunctive relief sought by TAC.

(2) whether the trial court abused its discretion by refusing to grant TAC's request for a temporary injunction to prevent the City from spending additional monies in furtherance of the development agreements. We reverse and remand.

### Factual and Procedural Background

TAC is a Texas corporation located in Bryan, Texas. It owns real property in the City and pays property taxes to the City. On November 2, 1999, the Bryan City Council approved three agreements with third-party developers as part of a project to develop a country club, golf course, hotel, conference center, and high-end residential area in the City ("Traditions Project"). In this lawsuit, TAC alleges the three agreements entered into by the City in connection with the Traditions Project obligated the City (1) to pay for the acquisition of land, public infrastructure improvements, and major utilities; (2) to donate land for a golf course and millions of gallons of water for use by the golf course developer; and (3) to contribute land and cash, in addition to a non-interest-bearing loan, toward the construction of certain improvements. TAC further alleges that the funds identified by the Bryan City Council on the same day the City Council approved the agreements were insufficient to satisfy the City's obligations under the development agreements. The City does not refute TAC's allegation that of the five funds identified, only two in fact existed and contained a total of $3.2 million. The City instead contends the City Council was told, prior to voting on the agreements, that it would be necessary to issue certificates of obligation in order to perform under the agreements. On October 26, 2000, the City issued approximately $17 million in Series 2000A certificates of obligation, an authorized use of which is paying "contractual obligations to be incurred" by the City in connection with, *inter alia*, the acquisition of streets and construction of improvements to real property. The City pledged ad valorem tax revenues during each year the certificates are outstanding and unpaid in an amount sufficient to fund the repayment of the bonds (both principal and interest). The City also created an interest and sinking fund of no less than 2% per annum.

In response to TAC's filing of this lawsuit, alleging the agreements violate article 11, section 5 of the Texas Constitution and the Charter of the City of Bryan and are contrary to Texas public policy, the City filed a plea to the jurisdiction and statement in opposition to temporary injunction. The City argued TAC lacked taxpayer standing and that the City did not have a binding obligation under the agreements when the City Council approved them, and the agreements, which were amended, are not void under article 11, section 5 of the Texas Constitution. The trial court held an evidentiary hearing on the City's plea and issued an order to sustain the City's plea and dismissed the case for lack of subject-matter jurisdiction on the basis that TAC does not have taxpayer standing to challenge the agreements. The trial court found that TAC failed to make a prima facie showing that "the City of Bryan is currently using or will use or will have to use ad valorem tax dollars to fund performance of the amended agreements" or "that the amended agreements ... are not in compliance with Art. 11, Section 5 of the Texas Constitution."

### Discussion

#### A. Standard of Review

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep.*

*Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex.2000). Because subject-matter jurisdiction presents a question of law, we review a trial court's order granting a plea to the jurisdiction de novo. *See Metro. Transit Auth. v. Burks*, 79 S.W.3d 254, 256 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

■■■■■ A party may challenge the absence of subject-matter jurisdiction by a plea to the jurisdiction and by other procedural vehicles, such as a motion for summary judgment. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Id.* The purpose of a dilatory plea is not to force a plaintiff to preview its case on the merits, but to establish a reason why the merits of its case should never be reached. *Id.*

> In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent.

*Id.* at 554–55. A trial court accepts the factual allegations in the petition as true, unless the defendant pleads and proves the allegations were fraudulently made to confer jurisdiction. *Id.* at 554. When reviewing a trial court's order on a plea to the jurisdiction, an appellate court may look to evidence outside of the pleadings. *Id.*

> [T]he issues raised by a dilatory plea are often such that they cannot be resolved without hearing evidence. And because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction.
>
> . . .
>
> The court should, of course, confine itself to the evidence relevant to the jurisdictional issue.

*Id.* at 554–55.

## B. Taxpayer Standing

In its first issue, TAC asserts the trial court improperly ruled on the merits of TAC's claim when the trial court found TAC does not have standing to challenge the City's development agreements. The Texas Supreme Court recently addressed the issue of taxpayer standing in *Williams v. Lara*, 52 S.W.3d 171 (Tex.2001). In *Williams*, the court stated that "[t]axpayers in Texas have standing to enjoin the illegal expenditure of public funds, and need not demonstrate a particularized injury. Implicit in this rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity." *Williams*, 52 S.W.3d at 179. The City does not dispute TAC's status as a taxpayer in Brazos County. The only issue is whether TAC satisfies the second requirement—namely, can TAC show that "public funds are being expended on the allegedly illegal activity"? *See id.* at 179.[2]

---

2. TAC argues the trial court committed reversible error by failing to find TAC made a prima facie showing that the agreements violate article 11, section 5 of the Texas Constitution. Although TAC cites the rule for taxpayer standing announced in *Williams*, and argues it need not prove the illegality of the challenged contracts for purposes of determining standing, TAC contends it nevertheless proved the agreements' illegality. Be-

To determine whether the trial court erred in its conclusion, we focus our attention on the supreme court's discussion of taxpayer standing in *Williams*. In *Williams*, former inmates and a Tarrant County resident sued Tarrant County and its sheriff, alleging that a religious-education program (the Chaplain's Education Unit ("CEU")) in a county jail facility violated the Texas and United States Constitutions and the plaintiffs' civil rights under section 1983 of title 42 of the United States Code. *Id.* at 175. The court recognized that it had not determined what constitutes "expending public funds," and turned to federal court authority for guidance. *See id.* at 181. After concluding the federal court jurisprudence of municipal taxpayer standing is most analogous to the requirements necessary to establish taxpayer standing in Texas, the court stated that a litigant must prove that the "government is actually expending money on the activity that the taxpayer challenges; merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough." *Id.* As an example, the court cited a Ninth Circuit Court of Appeals decision in which the court concluded there was no taxpayer standing to challenge a graduation prayer because spending tax dollars on renting a hall, printing programs, buying decorations, and hiring a security guard was necessary even if the ceremony did not include a prayer. *See id.* at 181–82 n. 6 (citing *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 793–96 (9th Cir.1999)).

In *Williams*, the court concluded that Tarrant County used public funds to manage the CEU: "Based on their own testimony, we conclude that Sheriff Williams and Chaplain Atwell spent a significant amount of the County's time operating the CEU, including shaping and promoting its religious curriculum, and therefore that county funds were expended in operating the CEU." 52 S.W.3d at 183. The court further concluded that because Flowers was a Tarrant County taxpayer, "and because public funds are expended in running the CEU," Flowers had standing as a taxpayer to seek injunctive relief. Although the supreme court referred both to "tax dollars," *see id.* at 182, and "county funds," *see id.* at 183, it seems clear from the totality of the court's opinion that a taxpayer challenging a municipal activity is not required to prove that ad valorem tax dollars are expended on the challenged activity, only that public funds are spent on the allegedly illegal activity.[3] *See id.* at 183 n. 7 (citing *Harvey v. Cobb County*, 811 F.Supp. 669, 675–76 (N.D.Ga.1993) (finding that because a county inmate crew moved a Ten Commandments panel to new location and cleaned it, county funds were expended, and thus plaintiff had taxpayer standing), *aff'd without opinion*, 15 F.3d 1097 (11th Cir.1994)). Additionally, it does not matter that the City issued certificates of obligation, even assuming the City did not directly use ad valorem tax dollars to fund its contractual obligations under the development agreements.

Even though the court in *Williams* also held that the CEU was an unconstitutional

cause a resolution of whether TAC proved the illegality of the challenged agreements necessitates this court making a merit-based determination, we decline to reach this issue. We only decide whether TAC established taxpayer standing.

**3.** Obviously, citizens may not know how municipalities allocate their tax revenues, and it would be overly burdensome and impractical to require plaintiffs to trace particular tax revenues to the funds being spent on allegedly illegal activity. It is also conceivable that much of Texas case law presumes "public funds" equates to "tax dollars" because common sense dictates that municipal governments operate using property tax revenues.

establishment of religion, *see id.* at 176, its standing analysis was entirely separate and did not turn on the question of whether the plaintiffs proved the illegality of the challenged activity. *See id.* at 180–81. To the contrary, the court framed the dispositive issue pertinent to the standing inquiry as "whether Tarrant County is actually expending public funds in operating the CEU." *Id.* Moreover, no earlier case decided by the Texas Supreme Court supports a contrary holding. In both *Calvert v. Hull,* 475 S.W.2d 907 (Tex.1972), and *Osborne v. Keith,* 142 Tex. 262, 177 S.W.2d 198 (1944), cited in *Williams,* the court decided, without extensive discussion, that the plaintiffs had standing as taxpayers, although the contracts or governmental acts challenged were ultimately found not to be illegal. *See Calvert,* 475 S.W.2d at 908; *Osborne,* 142 Tex. at 264, 177 S.W.2d at 200. The court's language in *Osborne* to the effect that a taxpayer only has standing to "enjoin public officials from expending public funds under a contract that is void or illegal," does not mean that a plaintiff must prove that the contract is illegal in order to have standing to challenge the contract. 177 S.W.2d at 200. In making the quoted statement, the court was emphasizing that taxpayers should not succeed on their claims if they are merely challenging "unwise or indiscreet expenditures" or if the contract is "merely voidable." *Id.* In neither case did the court address the question of a plaintiff's standing as a threshold issue. Based on our review of the relevant case law, the same is true for all earlier Texas cases involving challenges to governmental acts under article 11, section 5 of the Texas Constitution. We have been able to find only a few that mention standing and those statements are contained in dicta. *See Hoffman v. Davis,* 128 Tex. 503, 508, 100 S.W.2d 94, 96 (1937) ("When a taxpayer brings an action to restrain the illegal expenditure by the commissioners'

court of tax money he sues for himself, and it is held that his interest in the subject-matter is sufficient to support the action. . . ."); *City of Austin v. McCall,* 95 Tex. 565, 577, 68 S.W. 791, 794 (1902) (" 'Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question.' ") (quoting *Crampton v. Zabriskie,* 101 U.S. 601, 609, 25 L.Ed. 1070 (1879)).

In conclusion, the court's clarification of taxpayer standing in *Williams* does not require that a plaintiff prove the challenged activity is illegal. But, more than an allegation of unlawful expenditure is required. Plaintiffs first must allege and prove they pay ad valorem taxes. *Williams,* 52 S.W.3d at 180 (holding payment of sales taxes is not sufficient to confer taxpayer standing). Second, plaintiffs must allege and prove public funds are being spent on the alleged illegal activity. *Id.* at 179. As we noted above, in deciding a plea to the jurisdiction, a reviewing court accepts the factual allegations in a plaintiff's petition as true, unless the defendant pleads and proves the allegations were fraudulently made to confer jurisdiction. *See Bland,* 34 S.W.3d at 554. The City has not pleaded or proved TAC fraudulently made allegations in its petition in an effort to confer standing. We are not fearful that our holding will open a floodgate of taxpayer lawsuits challenging municipal contracts because affording a plaintiff standing to challenge municipal expenditures does not necessarily mean that the resulting suit or claim will succeed on the merits. We are bound by the Texas Supreme Court's pronouncement in

*Williams*, and apply the rule for taxpayer standing announced in it.[4]

As *Bland* made clear, a hearing and evidence on the question of whether TAC is a property taxpayer is proper. *See id.* at 554 (stating that evidentiary inquiry into the nature and purpose of plaintiff organization to determine if it has standing to assert claims on behalf of its members "does not involve a significant inquiry into the substance of the claims"). However, a hearing on the merits of TAC's claim in response to the City's plea to the jurisdiction was not proper. *See id.* at 554–55 ("A plea to the jurisdiction cannot be used to require the plaintiff to prove the damages to which he is entitled in order to show that they exceed the court's jurisdictional limits."). Turning our attention to the trial court's disposition of the City's plea to the jurisdiction, the evidence considered by the trial court went to the merits of TAC's claim—namely, whether the development agreements at issue violate the Texas Constitution. *Cf. id.* at 555 (concluding evidence offered by school district did not go to the merits of the plaintiffs' claim that the Public Property Finance Act was violated but only to the question of whether the plaintiffs had standing). Al-though the court in *Bland* did note that the evidence properly considered by the trial court in that case related to the "basic nature of the finance arrangement" at issue, *see id.*, that does not mean that a trial court should decide the merits of a taxpayer's claim in order to determine if a plaintiff has standing. The plaintiffs in *Bland* challenged a lease-purchase agreement between the school district and Citicorp, Inc. to allow for the construction of a new school, contending that it violated the Public Property Finance Act. *Id.* at 549. The court concluded that the plaintiffs lacked standing because all obligations under the contract had been completed except for the school district's obligation to repay the loan. *Id.* at 556. Construction of the school was complete and the building was occupied. *Id.* Citicorp had performed its obligations under the contract; only the school district had any remaining obligation—to repay the loan. *Id.* The court's holding in *Bland* was narrow: "When all that remains is a school district's repayment of a loan for work completed, allowance of a taxpayer action to prohibit such repayment threatens a substantial interference with governmental actions." *Id.* at 558.

---

4. We are unable to find an opinion reflecting that any Texas court of appeals has applied the rule enunciated in *Williams* to decide whether a plaintiff has standing as a taxpayer to challenge municipal activity. We thus appear to be the first court of appeals to be faced with this issue since the Texas Supreme Court decided *Williams*. However, we note that federal courts of appeals' decisions discussing municipal taxpayer standing are in accord with our holding that a taxpayer need not prove the illegality of the challenged activity to establish standing. *See generally, e.g., Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 282 (5th Cir.1999) ("[T]o establish ... municipal taxpayer standing ... a plaintiff must show only that (1) he pays taxes to the relevant entity, and (2) tax revenues are expended on the *disputed* practice.") (citations omitted) (emphasis added); *Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d 873, 879 (7th Cir.1996) ("[M]unicipal taxpayers have standing when they object to a disbursement of funds occasioned solely by the *alleged* unconstitutional conduct. Municipal taxpayer status does not confer standing absent some *allegation* by the plaintiffs of an illegal use of tax revenues.") (citations omitted) (emphasis added); *United States v. New York*, 972 F.2d 464, 470 (2d Cir.1992) (stating proposition "municipal taxpayers have standing to challenge allegedly unlawful municipal expenditures," and concluding plaintiff had standing to challenge city's expenditure of funds on contracts, but affirming district court's grant of summary judgment in favor of city on plaintiff's claims) (citations omitted).

The issues in this case are quite different than those presented in *Bland*. It is undisputed that the City has spent or is spending public funds on the agreements TAC challenges. Whether those dollars are from funds already segregated by the City for any particular purpose or are from ad valorem tax dollars earmarked for this purpose is not relevant to the question of whether TAC has standing. The City does not contend TAC fraudulently pleaded its allegations in an effort to devise standing. Yet, in reaching its conclusion that TAC did not have standing, the trial court inappropriately ruled on the merits of TAC's claims.

## Conclusion

We hold that the trial court's finding that TAC lacked standing because it failed to make a prima facie showing that the Traditions Project development agreements violate article 11, section 5 of the Texas Constitution was an improper ruling on the merits of TAC's claim. Construing the allegations in the original petition in TAC's favor, we conclude the trial court erred in finding that TAC does not have taxpayer standing to challenge the agreements. Accordingly, we sustain TAC's first point of error.

Because of our disposition of TAC's first point of error, we do not decide whether TAC is entitled to injunctive relief. Although we recognize the trial court's findings in essence constitute a decision on the merits, the trial court did not rule on TAC's request for injunctive relief. In the absence of a ruling, we cannot decide whether TAC is entitled to injunctive relief. *See Huston v. F.D.I.C.*, 663 S.W.2d 126, 129 (Tex.App.-Eastland 1983, writ ref'd n.r.e.) ("Only such matters which were presented before the trial court will be reviewed upon this appeal from the order sustaining the defendant's plea to the jurisdiction and dismissing the cause.") (quoting *Paradissis v. Royal Indemn. Co.*, 496 S.W.2d 146, 148 (Tex.Civ.App.-Houston [14th Dist.] 1973), *aff'd*, 507 S.W.2d 526 (Tex.1974)); *Watson v. Missouri–Kansas Texas R.R. Co. of Texas*, 173 S.W.2d 357, 362 (Tex.Civ.App.-El Paso 1943, no writ) (stating that because trial court did not pass on the merits of the case, but sustained the intervenor's plea to the jurisdiction, dissolved the temporary injunction, and dismissed the case, there was nothing before the court of appeals to review except for the trial court's action in dismissing the cause).

We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.