**Affirmed and Substitute Majority Opinion and Concurring Opinion filed November 26, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00819-CV

**LONE STAR COLLEGE SYSTEM AND RICHARD CARPENTER, Appellants**

**V.**

**IMMIGRATION REFORM COALITION OF TEXAS (IRCOT), Appellee**

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2009-79110**

## S U B S T I T U T E   M A J O R I T Y   O P I N I O N

Appellants, Lone Star College System (LSCS) and its chancellor, Richard Carpenter, bring this interlocutory appeal from the trial court's order denying, in part, their Motion to Dismiss for Lack of Jurisdiction. Appellee, the Immigration Reform Coalition of Texas (IRCOT), brought this state taxpayer lawsuit against appellants, among other Texas governmental entities and officials, alleging that

state funds were being expended pursuant to state laws that are preempted by federal law. IRCOT seeks declarations and injunctive relief under the Uniform Declaratory Judgments Act (UDJA). On appeal, appellants contend that the trial court and this court do not have subject-matter jurisdiction over IRCOT's claims because (1) appellants have governmental immunity, (2) IRCOT lacks standing, and (3) the claims are not ripe.

We issued an opinion in this case on October 17, 2013, affirming the trial court's order. Appellants subsequently filed a motion for rehearing. Without changing the disposition of the case, we deny the motion for rehearing, withdraw our previous opinion, and issue this substitute opinion in its place.

## I. Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law we review *de novo*. *City of Houston v. Williams*, 353 S.W.3d 128, 133–34 (Tex. 2011). Appellants' Motion to Dismiss for Lack of Jurisdiction is effectively a plea to the jurisdiction. *See, e.g., Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 112 (Tex. App.—Dallas 2012, no pet.); *Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 860 (Tex. App.—Houston [14th Dist.] 2002, no pet.). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226-27. We may also consider evidence submitted to negate the existence of jurisdiction, and we must consider such evidence when necessary to resolve the jurisdictional issues. *Heckman*, 369 S.W.3d at 150. We take as true all evidence

2

favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Miranda*, 133 S.W.3d at 228. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150. In ruling on such a plea, a court should not consider the merits of the parties' claims. *E.g., County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *TAC Realty, Inc. v. City of Bryan*, 126 S.W.3d 558, 561 (Tex. App.—Houston [14th Dist.] 2003, pet. granted, judgm't vacated w.r.m.).

## II. Proceedings in Trial Court

In its live pleadings, IRCOT alleges that appellants, among other Texas entities and officials, have in the past and will continue in the future to provide education grants to illegal aliens[1] using Texas state funds in violation of federal statutes.[2] IRCOT asserts associational standing on behalf of its members, whom it alleges include people who pay a variety of state taxes that go into the state's General Revenue Fund. The taxes IRCOT identifies include those placed on sales, motor vehicles, fuel, franchises, oil and natural gas production, and occupation as an attorney.

IRCOT specifically seeks declaratory judgment that "in Texas, an illegal alien is not eligible for" state student financial aid and that provisions of Texas law

---

[1] The parties choose different nomenclature to describe the students at issue in this case. Because the federal statutes at issue, cited *infra*, employ the term "illegal aliens," we will use that term in this opinion.

[2] IRCOT's live pleadings include its First Amended Petition and two supplemental petitions. IRCOT additionally named as defendants: the State of Texas and its comptroller, Susan Combs, and the Texas Higher Education Coordinating Board and its commissioner, Raymund Paredes. In its Original Petition, IRCOT also named as defendants the University of Houston System, the Houston Community College System, and their respective chancellors. IRCOT has dropped these defendants from subsequent pleadings.

authorizing such aid are "preempted, void, and of no effect." IRCOT further "seeks an order enjoining the defendants from making, approving, or forwarding a monetary grant to an illegal alien under the Texas Educational Opportunity Grant Program, the Toward Excellence, Access, & Success [TEXAS] Grant Program, or the Tuition Equalization Grant Program." IRCOT also requests a declaration that the section of the LSCS policy manual implementing certain portions of the Texas Education Code are preempted by federal law. IRCOT asserts that illegal aliens attending state-supported universities in Harris County receive grants under the listed programs.[3]

According to IRCOT, the awarding of these grants to illegal aliens is facially authorized under Texas statutes; however, IRCOT further contends that these statutes are preempted by federal statutes. The specific state statutes IRCOT contends are preempted include portions of the Texas Education Code defining who can be considered a Texas resident for educational purposes as well as sections of the code authorizing awards of grant funds to Texas residents.[4] IRCOT urges that the following sections of Title 8 of the United States Code have preemptive effect:

---

[3] At one point in the proceedings, IRCOT also challenged the provision of discounted in-state tuition to illegal aliens; however, in its current pleadings, IRCOT expressly disavows seeking any relief on that basis.

[4] *See* Tex. Educ. Code §§ 54.0501 (defining "residence"), 54.051(m) (indicating a citizen of a foreign country may establish residency in Texas), 54.052 (defining who may be considered a resident of Texas for purposes of that section of the code), 54.053 (specifying the information required to establish resident status), 56.302 (naming the TEXAS grant program), 56.304 (stating that to be eligible for a TEXAS grant a student must be a Texas resident), 56.402(a) (naming the Texas Educational Opportunity Grant Program); 56.404(a)(1) (stating that to be eligible for a grant from that program, a student must be a Texas resident), 61.221 (authorizing provision of "tuition equalization grants" to Texas residents enrolled in Texas colleges and universities), 61.2251 (requiring that a recipient of a tuition equalization grant must be a Texas resident). IRCOT also identifies specific sections of THECB's administrative rules regarding residency and educational grants as having been preempted. *See* 19 T.A.C. §§ 21.24(a)(1), 22.21-22.33, 22.225-22.240, 22.253-22.263.

• Section 1601(6), which states that: "It is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits."

• Section 1621, which provides that, except for specifically defined classes of aliens, aliens are generally ineligible for any State or locally provided benefits, including postsecondary education benefits. However, it further authorizes States to provide such benefits to illegal aliens through the enactment of State laws after August 22, 1996.

• Section 1623, which states: "Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident."

• Section 1625, which states: "A State or political subdivision of a State is authorized to require an applicant for State and local public benefits (as defined in section 1621(c) of this title) to provide proof of eligibility."

8 U.S.C. §§1601(6), 1621, 1623, 1625.

After answering in the litigation, appellants filed their plea to the jurisdiction, contending the trial court did not have jurisdiction in this case because appellants have governmental immunity, IRCOT lacks standing, and the asserted claims are not ripe. IRCOT filed a response, and the trial court denied the motion in part and granted it in part. Appellants then filed a motion for reconsideration, and the trial court entered an Order Regarding Jurisdiction. In this order, the court specifically set forth its rulings, including, as relevant to this appeal: (1) IRCOT does not have standing based on its members paying state sales, motor vehicle, or fuel taxes[5]; (2) the record is insufficient to make a determination regarding

---

[5] The court based this ruling on the Texas Supreme Court's pronouncement in *Williams v. Lara* that paying sales tax could not confer taxpayer standing because holding otherwise would permit "even a person who makes incidental purchases while temporarily in the state [to] maintain an action." 52 S.W.3d 171, 180 (Tex. 2001). IRCOT does not challenge this holding

5

standing based on payment of the franchise, attorney occupation, and oil and gas production taxes; (3) IRCOT met its pleading requirement for standing when it alleged its members pay taxes that are expended on allegedly illegal activity; (4) the UDJA waives governmental immunity for "relevant government entities" on claims under the act which challenge the validity of ordinances or statutes; and (5) IRCOT met its pleading requirement in regards to Chancellor Carpenter when it alleged that he had authority under state law to comply with applicable federal laws. On the basis of these holdings, the court granted appellants' plea regarding standing based on the payment of sales, motor vehicle, and fuel taxes.[6] The court otherwise denied the relief appellants sought.

### III. Governmental Immunity[7]

Appellants first contend that the trial court and this court do not have jurisdiction in this case based on application of the doctrine of governmental immunity. Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 225–26. Absent a waiver of governmental immunity, a

---

on appeal.

[6] While recognizing that IRCOT had expressly dropped its claims regarding discounted tuition (in its First Supplemental Petition), the court stated in its order that IRCOT had no taxpayer standing to challenge reduced tuition because no public funds were expended in offering reduced tuition to aliens.

[7] Appellants use the terms "sovereign immunity" and "governmental immunity" interchangeably in their briefing, and Texas courts, including the Texas Supreme Court, have used them interchangeably as well; nonetheless, they denote two distinct but greatly related concepts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Sovereign immunity refers to the State's immunity from suit and liability, and, in addition to the State itself, it also protects its various divisions, such as agencies, boards, hospitals, and state universities. *Id*. Governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Id*. The parties agree that as a junior college district organized under Chapter 130 of the Texas Education Code, LSCS is a political subdivision of the State. We will therefore use the term "governmental immunity" in this opinion.

6

state entity may not be sued. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Governmental immunity bars UDJA actions against the state and its political subdivisions absent a legislative waiver. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). We review immunity issues under a *de novo* standard. *Id*.

IRCOT alleged in its pleadings that the UDJA waived LSCS's immunity and that Carpenter was not immune because his actions were *ultra vires*, or outside his authority. Appellants asserted in their plea to the jurisdiction that LSCS's immunity was not in fact waived and that IRCOT has not alleged any *ultra vires* conduct by Carpenter. The trial court found in favor of IRCOT on both propositions, specifically stating the UDJA waived immunity for LSCS and that IRCOT sufficiently pleaded *ultra vires* claims against Carpenter. We concur with both rulings.

## A. Waiver of LSCS's Immunity

Section 37.006(b) of the UDJA contains a waiver of immunity from suit. Tex. Civ. Prac. & Rem. Code §37.006(b)[8]; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). Based on this statutory waiver, the Texas Supreme Court has declared that when claims challenge the validity of ordinances or statutes, relevant governmental entities must be made parties; thus, governmental immunity is waived for those entities. *Heinrich*, 284 S.W.3d at 366, 373; *see also Leeper*, 893 S.W.2d at 446

___

[8] Section 37.006(b) states as follows:

In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

Tex. Civ. Prac. & Rem. Code 37.006(b).

("The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements."). The court has further explained that because the UDJA "permits statutory challenges and governmental entities may be bound by those challenges, the DJA contemplates entities must be joined in those suits." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010) (discussing *Leeper*). Statutory challenges include claims that a statute is invalid for constitutional or nonconstitutional reasons and claims merely seeking interpretation or clarification of a statute. *See id.* at 634-35; *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007); *Town of Flower Mound v. Rembert Enters.*, 369 S.W.3d 465, 474 (Tex. App.—Fort Worth 2012, pet. denied); *Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W.3d 338, 347-48 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

As discussed above, IRCOT principally seeks a declaration that sections of the Texas Education Code it contends authorize the award of education grants to illegal aliens have been preempted by certain federal laws prohibiting such aid. This claim both seeks an interpretation and asserts the invalidity of Texas statutes. LSCS, however, argues that it is not a "relevant government entity" under the UDJA, *Heinrich*, or *Leeper* because it is a local, rather than state, governmental unit. Tex. Civ. Prac. & Rem. Code §37.006(b); *Heinrich*, 284 S.W.3d at 373 n.6; *Leeper*, 893 S.W.2d at 446.

LSCS, though a local political subdivision of the State, is a proper defendant because governmental entities that may be bound by statutory challenges must be joined in such suits, and LSCS would be bound by the trial court's decision here.

8

*See Tex. Lottery Comm'n*, 325 S.W.3d at 634; *see also McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 694-98 (Tex. 1955) (holding local school officials were proper defendants in action concerning validity of state statute); *Brennan v. City of Willow Park*, 376 S.W.3d 910, 924 (Tex. App.—Fort Worth 2012, pet. denied) (holding local government entities were proper defendants in declaratory judgment action seeking construction of state statute to which local entity may be bound). Under the terms of the grant statutes and governing regulations, LSCS serves as an agent and administrator of the programs and was a recipient of grant funds.[9] The trial court did not err in holding that governmental immunity was not waived for these claims against LSCS.

## B. *Ultra Vires* Acts by Carpenter

As stated, the court's jurisdiction over the claims against Carpenter turn on whether IRCOT sufficiently raised *ultra vires* claims against him. A suit asserting that a government officer acted without legal authority or seeking to compel a governmental official to comply with statutory or constitutional provisions is an *ultra vires* suit and is not subject to pleas of governmental immunity. *See*

---

[9] *See, e.g.,* Tex. Educ. Code §§ 56.303(a) (providing officers of eligible institutions a role in developing rules for implementing TEXAS grant program), (e) (authorizing eligible institutions along with coordinating board to determine who should receive a TEXAS grant and authorizing eligible institutions to determine financial need of students), and (f) (authorizing eligible institutions to make awards to students); 56.403(a) (providing officers of eligible institutions a role in developing rules for implementing Texas Educational Opportunity Grant Program) and (d) (authorizing eligible institutions along with coordinating board to determine who should receive a grant based on financial need); 56.406 (authorizing eligible institutions to disburse grant funds to students); 56.407(f) (placing restrictions on institutions' administration of funds); 61.2251(c) (providing eligible institutions with authority to determine whether recipient of a tuition equalization grant is making satisfactory progress toward a degree); 61.227 (governing institutions' administration of such grants); *see also* 19 T.A.C. §§ 22.23 (providing for administration of tuition equalization grant program by institutions of higher learning); 22.227 (providing for administration of TEXAS grant program by institutions of higher learning); 22.236 (providing for disbursement of program funds to the institutions); 22.255 (providing for administration of Texas Educational Opportunity Grant Program by institutions of higher learning), 22.262 (providing for disbursement of program funds to the institutions).

*Heinrich*, 284 S.W.3d at 372. Such a suit, in effect, does not seek to alter government policy; it seeks to enforce existing policy. *Id.* Because these suits are not considered to be suits against the state, they must be brought against the allegedly responsible state actors in their official capacities, as IRCOT has done here. *See id.* at 373; *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.2d 256, 258 (Tex. 2010). To fall within the *ultra vires* exception to governmental immunity, a plaintiff may not complain about a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372. The exception permits only prospective declaratory or injunctive relief restraining *ultra vires* conduct, as opposed to retroactive relief. *Id.* at 374–77.

Appellants' position is that while IRCOT alleges *ultra vires* acts are being committed, i.e., that *someone* at LSCS is acting without authority in providing grants to illegal aliens, IRCOT has not alleged that Carpenter himself has acted in any way without authority. We agree with appellants that IRCOT has raised *ultra vires* claims but disagree that Carpenter, in his official capacity, is not implicated. IRCOT's *ultra vires* claims essentially allege that, as chancellor, Carpenter has the authority to ensure that LSCS complies prospectively with applicable federal laws. In support, appellants cite portions of the LSCS Policy Manual which state that "[t]he Chancellor is the Chief Executive Officer of the System, interpreter of policy adopted by the Board, and the only employee reporting directly to the Board. Operating under a line and staff form of organization, appropriate reporting lines are defined by the Chancellor." Thus, even though Carpenter may not be the LSCS representative who actually distributes grant funds to illegal aliens, IRCOT alleges he has the authority to direct the work of the LSCS employees who will

10

distribute the grants. He is an allegedly responsible government actor in his official capacity under these circumstances. *See, e.g., De Los Santos v. City of Robstown*, No. 13-11-00278-CV, 2012 WL 6706780, at *8 (Tex. App.—Corpus Christi Dec. 13, 2012, no pet.) (mem. op.) (holding governmental immunity did not bar *ultra vires* claims against mayor of city and president of improvement district).

### C. Statutory Challenge and *Ultra Vires* Claims in Same Lawsuit

Although not specifically raised by appellants, some of their arguments suggest the proposition that it is not permissible to have both a statutory challenge and *ultra vires* claims in the same lawsuit. Appellants cite no authority supporting such a proposition, and we have found none. Appellants here, in fact, both assert the invalidity of certain statutes and *ultra vires* acts, *i.e.*, actions outside the named official's authority; both sets of claims are based on preemption of state law by federal law. IRCOT effectively argues Carpenter was acting under color of state law, which IRCOT claims was preempted. So, IRCOT raises both a challenge to the validity of the state law—alleging preemption—and an *ultra vires* claim—alleging Carpenter acted without authority (because the authority he may have thought he was following had been preempted).

Although the supreme court in *Heinrich* did not expressly sanction the combining of both types of claims in the same lawsuit, the court did mention the fact that the plaintiff in that case was not challenging the validity of the local entities' bylaws or the governing statute but was instead challenging the officials' actions under them. 284 S.W.3d at 373 n.6; *see also De Los Santos*, 2012 WL 6706780, at *3-8 (finding jurisdiction over both claims challenging validity of city ordinance and *ultra vires* claims against city officials in same lawsuit). Seeing no legal or policy reason for not finding jurisdiction on both sets of claims, we

11

overrule appellants' first issue.[10]

## IV. IRCOT's Standing

In their second issue, appellants assert that IRCOT lacks standing to bring the claims it has raised in this case. Standing is a constitutional prerequisite to suit. *Heckman*, 369 S.W.3d at 150. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *Id.* If a plaintiff lacks standing to assert a claim, the court lacks jurisdiction over that claim and must dismiss it, and if the plaintiff lacks standing to bring any of its claims, the court must dismiss the whole action for want of jurisdiction. *Id.* at 150-51.

### A. State Taxpayer Standing

IRCOT asserted in its pleadings that it has associational standing for its members who are state taxpayers.[11] "In general, taxpayers do not have a right to bring suit to contest government decision-making because . . . governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public

---

[10] One rationale for permitting both types of claims to continue in the same lawsuit is that jurisdictional issues typically arise early in the litigation process, often before the true nature of the plaintiff's claims have crystallized through discovery and motions practice. Indeed, alternative pleading is a very common occurrence for this very reason. There may be a myriad of ways in which one or the other type of claim becomes removed from the lawsuit, and it would not be fair to require a plaintiff to only assert one of the potential claims.

[11] IRCOT specifically alleges in its First Supplemental Petition that its members have paid several specific state taxes that contribute to the state's general fund and that the grant programs at issue in this lawsuit are financed from the general fund. In their motion for rehearing, appellants assert that they challenged these allegations in the trial court with evidence and, thus, IRCOT was required to present controverting proof that such taxes were paid yet failed to do so. Appellants, however, offer no citation to any place in the record where they raised this issue in the trial court or where they offered evidence showing IRCOT members did not pay these taxes. Instead, appellants conceded to the trial court that the taxes IRCOT named do in fact help fund the programs at issue (through the general fund). As will be discussed in this section of the opinion, appellants argued below that the taxes allegedly paid were too attenuated to the challenged programs to confer standing on the taxpayers.

acts under review." *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (quoting *Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 200 (Tex. 1944)). Generally, to have standing, unless it is conferred by statute, taxpayers must show that they have suffered a particularized injury distinct from that suffered by the general public. *Id.* at 555–56. However, Texas has long recognized an exception whereby a taxpayer may sue to enjoin the illegal expenditure of public funds without demonstrating a distinct injury. *Id.*[12] The exception, "strictly limited, provides important protection to the public from the illegal expenditure of public funds without hampering too severely the workings of the government." *Id.* (refusing to apply taxpayer exception where contract sought to be enjoined had already been performed and suit was, therefore, moot, and concluding that potential for disruption of government operations was too great to allow taxpayer with no special injury distinct from general public to sue to prohibit government from paying for goods and services already received). In short, to establish taxpayer standing to enjoin the illegal expenditure of public funds, a plaintiff must show: (1) the plaintiff is a taxpayer, and (2) public funds are expended on the allegedly illegal activity. *Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012).

As discussed above, IRCOT alleged state taxpayer standing based on its members' payment of state taxes assessed against franchises, oil and natural gas production, and attorney occupation.[13] IRCOT further asserted that funds collected

---

[12] In *Terrell v. Middleton*, the court held that a state taxpayer had standing to sue the state comptroller to enjoin the illegal expenditure of public funds to privately benefit the governor. 187 S.W.367, 369 (Tex. Civ. App. 1916), *writ ref'd*, 108 Tex. 14, 191 S.W. 1138 (1917); *see also Calvert v. Hull*, 475 S.W.2d 907, 908 (Tex. 1972) (following *Terrell* and holding that state taxpayers had standing to bring action to enjoin disbursement of funds appropriated for establishment of new university when prerequisites for such disbursement allegedly had not occurred). "The diversion of the taxes after collection from legal purposes would be equally as injurious to the taxpayer as the collection of illegal taxes." *Terrell*, 187 S.W. at 369.

[13] Citing *Lara*, the trial court determined in its order that IRCOT does not have standing based on payment of sales, motor vehicle, or fuel taxes. 52 S.W.3d at 180. IRCOT has not

at least in part through these taxes were expended illegally through the provision of educational grants to illegal aliens in violation of federal law.[14] In its order, the trial court stated that the record was not sufficiently developed to make a determination regarding standing based on payment of these taxes.

## B. Appellants' Arguments on Standing

In support of their no-standing position, appellants make a number of arguments, including that IRCOT failed to allege or prove (1) any actual or threatened injury or unconstitutional restriction on its members' rights or (2) that local taxes were used by LSCS to fund the grants. Appellants further assert that because (3) the federal statutes in question do not provide a private right of action and (4) all of the money for the grants came from the State not LSCS, IRCOT does not have standing to sue LSCS.

We begin with appellants' arguments that IRCOT failed to allege or prove certain circumstances. First, as discussed above, it is not required to allege or prove a distinct injury or restriction in order to establish standing under the exception for taxpayer suits to enjoin illegal expenditures. *See, e.g., Andrade*, 372 S.W.3d at 137.[15] Furthermore, IRCOT was not required to allege or demonstrate that local taxes were used by LSCS to fund the educational grants to support its claim of state taxpayer standing. IRCOT alleged that its members paid certain

_____

appealed that finding.

[14] Indeed, appellants do not appear to contest that the listed taxes all contributed to the State's general fund and that amounts from the general fund went to the educational grants in question.

[15] Appellants cite a property rights case, *Barshop v. Medina Underground Water Conservation District*, 925 S.W.2d 618, 626 (Tex. 1996), in support of their argument that, to have standing (presumably for its request for declaratory relief), IRCOT must show the statute unconstitutionally restricts IRCOT members' rights; however, appellants do not demonstrate why the taxpayer exception to standing requirements does not apply to IRCOT's request for a declaration that the Texas statute that arguably allows illegal expenditures is preempted.

14

specific state taxes that were identified as among the sources of the funding for grants.

Next, we turn to appellants' standing argument based on the proposition that the federal statutes, which IRCOT alleges have preemptive effect, do not provide for a private right of action. *See* 8 U.S.C. §§1601(6), 1621, 1623, 1625. Although appellants argue this point at length, we need touch on it only briefly. IRCOT does not allege standing under the federal provisions; it raises a state taxpayer action to enjoin the illegal expenditure of funds. Appellants essentially maintain that IRCOT's state law claims are preempted by the enforcement mechanisms contained within the federal statutes. That an action is preempted by federal law is a defensive matter and not a question of standing or jurisdiction. *See Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 427 (Tex. 2005); *Edwards v. Blue Cross Blue Shield of Tex.*, 273 S.W.3d 461, 466-67 (Tex. App.—Dallas 2008, pet. denied), *cert. denied*, 558 U.S. 1111 (2010). Also, resolution of this dispute is fact-intensive; accordingly, it is not properly raised or considered as a matter of law in a plea to the jurisdiction. *See Webre v. Sneed*, 358 S.W.3d 322, 335 (Tex. App.—Houston [1st Dist.] 2011, pet. filed).

Lastly, appellants suggest that because all of the funds for the grants came from the State and not LSCS's own funds, IRCOT does not have standing to sue appellants.[16] It is admittedly somewhat unusual for a state taxpayer lawsuit to be filed against a local government entity[17]; however, given the interconnectedness

---

[16] Although at first blush this issue may not appear to impact standing, it must be remembered that to fit within the illegal–expenditure exception for taxpayer standing, IRCOT had to show that its members were taxpayers, *see Andrade*, 372 S.W.3d at 137; thus, the question is raised as to whether paying State taxes can be sufficient to confer standing to sue a local governmental entity.

[17] A rare but not unheard of type of lawsuit. *See, e.g., McKinney*, 282 S.W.2d 691 (holding local school board members were proper defendants in action concerning validity of

15

that often occurs between governmental entities at different levels when, as occurred here, the State authorizes and funds a program and a political subdivision of the State administers it and receives and distributes the funds, it can be difficult to determine exactly on what entity the legal action should focus.[18] The actual allegedly preempted action here was the awarding of State grant funds to illegal aliens. IRCOT has alleged that this transaction occurred, at least in part, at the local level. *Cf. McKinney*, 282 S.W.2d at 694-98 (holding local school board members were proper defendants in action concerning validity of state statute allocating or expending state school funds but that State Commissioner of Education and State Comptroller were not proper parties because their certification and transmittal of the funds were "purely ministerial and mandatory" duties).[19] IRCOT's pleading was sufficient to show standing. Appellants have offered no evidence to contradict IRCOT's allegations.

## C. Application of *Williams v. Lara*

An issue of some importance not specifically raised by appellants is whether the taxes at issue satisfy *Williams v. Lara*, 52 S.W.3d 171 (Tex. 2001). There, the Texas Supreme Court held that merely paying sales tax (in that case, local sales tax was at issue) was not sufficient to confer taxpayer standing because holding otherwise would permit "even a person who makes incidental purchases while

state statute allocating or expending state school funds); *Dallas County v. McCombs*, 135 Tex. 272, 140 S.W.2d 1109 (Tex. 1940) (holding in taxpayer action brought against county entities and officials that statute providing for state tax revenues to be granted and donated to several counties was unconstitutional); *cf. Fletcher v. Howard*, 120 Tex. 298, 39 S.W.2d 32 (Tex. 1931) (holding that State highway commission was properly enjoined from expending proceeds of county bonds for use on a different highway than the one for which the funds were originally designated).

[18] *See* n.8 *infra* listing statutes and administrative code sections demonstrating LSCS's administration of the grant programs.

[19] Under *Bland I.S.D.*, it is the taxpayer's interest in restraining the illegal expenditure of tax money that supports his or her standing in such an action. 34 S.W.3d at 556.

temporarily in the state [to] maintain an action." *Id*. at 180. The court further expressed concern about extending the right to sue to people "with virtually no personal stake in how public funds are expended." *Id*. In the same case, the court indicated that there was no question that another plaintiff, who paid property taxes on property he owned in the jurisdiction, had satisfied the "taxpayer" requirement. *Id*. The court, therefore, was clearly attempting to draw a line between different types of taxes, a line based to some degree on how invested an individual taxpayer was in the jurisdiction in which he paid taxes. *See Teneyuca v. Bexar County Performing Arts Ctr. Found.*, No. 04-11-00488-CV, 2012 WL 2053534, at *3 (Tex. App.—San Antonio June 6, 2012, no pet.) (holding payment of short-term motor vehicle rental tax was insufficient to confer standing because to hold otherwise, as the *Lara* court found with sales tax, would allow a person with virtually no personal stake to bring the government's actions under review).

Here, the trial court individually analyzed the taxes IRCOT relied upon in its pleadings. Specifically, the court found that payment of sales, motor vehicle, or fuel taxes did not provide standing, apparently because they are too transitory in nature and do not evidence a personal stake in how public funds are expended in Texas. IRCOT does not challenge this holding on appeal. The trial court further stated that the record was not developed sufficiently to determine whether payment of franchise, oil and natural gas production, and attorney occupation taxes would be sufficient, but the court ultimately found IRCOT at least met its pleading requirements. These taxes are each on business activities conducted in Texas and exhibit a much greater stake in the affairs of the State than the mere payment of sales tax. *See* Tex. Tax Code §§ 171.001(a) (imposing franchise tax "on each taxable entity that does business in this state or that is chartered or organized in this state"), 191.142 (imposing attorney occupation tax on all attorneys licensed in the

17

state), 201.051-.052 (imposing tax on natural gas producers in Texas); 202.051-.052 (imposing tax on oil production in Texas). We hold that allegations of payment of these taxes are sufficient to support state taxpayer standing.[20] Because we find IRCOT properly pleaded standing and appellants do not point to any evidence in the record as negating IRCOT's standing in this case, we overrule appellants' second issue.

## V. Ripeness

In their third issue, appellants contend that IRCOT's claims in this lawsuit are not ripe for adjudication. Ripeness is a component of subject-matter jurisdiction. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). Although a claim need not be fully ripened at the time suit is filed, the facts must be developed sufficiently for the court to determine that an injury has occurred or is likely to occur. *Id*. "[I]f a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed." *Id*. The ripeness requirement applies even if the party is seeking only a declaratory judgment. *Riner v. City of Hunters Creek*, 403 S.W.3d 919, 922 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The UDJA "gives the court no power to pass upon hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968), *superseded on other grounds by constitutional amendment, as recognized in Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997); *Riner*, 403 S.W.3d at 922.

---

[20] The attorney occupation tax is only $200 annually. Tex. Tax Code § 191.142. The Texas Supreme Court has not addressed whether the amount of taxes paid is evidence of a significant "personal stake in how public funds are expended." *See Lara*, 52 S.W.3d at 180. There is no evidence in the record regarding the amount paid on the other taxes.

In their argument, appellants characterize IRCOT's lawsuit as being based on a "theoretical dispute which might hypothetically take place in the future." Appellants further assert that there is no allegation or proof IRCOT suffered any concrete injury and that IRCOT's claims "depend[] on contingent or hypothetical facts, or on events that have not happened . . . are not yet mature[ and] are subject to change, and immediate litigation is not unavoidable."

As discussed above, IRCOT alleges in its pleadings, among other things, that appellants have in the past and will continue in the future to provide grants using Texas state funds, accumulated from taxes paid by IRCOT members, to illegal aliens in violation of federal statutes. IRCOT further alleges that sections of the LSCS policy manual that implement the grant programs violate, and thus are preempted by, federal law and that illegal aliens attending state-supported universities in Harris County, which includes LSCS in part, receive grants under the listed programs in violation of federal law. Construing IRCOT's pleadings liberally—as we are required to do under *Miranda*, 133 S.W.3d at 226-27—the allegations contained therein are sufficient to demonstrate that an actual controversy exists, that harm (in the form of alleged illegal expenditures of IRCOT's members' tax dollars) has occurred, is occurring, or is imminent, and that IRCOT's claims as pleaded are ripe for adjudication. *See Robinson*, 353 S.W.3d at 755 (explaining that although a claim need not be fully ripened at the time suit is filed, facts must have developed sufficiently to determine that an injury has occurred or is likely to occur); *see also Tex. Gen. Land Office v. Porretto*, 369 S.W.3d 276, 289 (Tex. App.—Houston [1st Dist.] 2011, pet. granted) (holding that a threat of harm is sufficient to constitute a concrete injury if the threat is "direct and immediate," quoting *Patterson v. Planned Parenthood of Houston*, 971 S.W.2d 439, 442 (Tex. 1998)). Appellants point to no undisputed evidence in the

19

record negating the existence of jurisdiction over these claims. *See Heckman*, 369 S.W.3d at 150 (explaining that a plea to the jurisdiction must be granted if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction). Accordingly, we overrule appellant's third issue.[21]

## VI.  Conclusion

Finding no error in the trial court's denial of appellant's plea to the jurisdiction, we affirm the trial court's order.


/s/     Martha Hill Jamison
Justice


Panel consists of Justices Christopher, Jamison, and McCally (Christopher, J., concurring) (McCally, J., joins in the Majority Opinion and in the Concurring Opinion).

---

[21] At one point in their arguments, appellants discuss the possibility that one of IRCOT's members might pay local taxes to LSCS in the future; however, as discussed above, this case involves state taxpayer claims, not claims based on payment of local taxes. These arguments are therefore inapposite. Appellants also include under issue three a contention that no injunctive relief should issue under the facts of this case. Such a merits-based argument is not relevant in an interlocutory appeal from the denial of a plea to the jurisdiction.