**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed March 17, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00274-CV

---

**DR. LOUIS PATINO, D.C.; DR. STEPHEN WILSON, M.D.; AND DR. GARY CRAIGHEAD, D.C., Appellants**

**V.**

**TEXAS DEPARTMENT OF INSURANCE-DIVISION OF WORKERS' COMPENSATION; COMMISSIONER RYAN BRANNAN AND DR. DONALD PATRICK, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES; STATE OFFICE OF ADMINISTRATIVE HEARINGS, TEXAS; CHIEF ADMINISTRATIVE LAW JUDGE CATHLEEN PARSLEY, IN HER OFFICIAL CAPACITY; TOMMY BROYLES, IN HIS OFFICIAL CAPACITY; THE STATE OF TEXAS; AND THE ATTORNEY GENERAL OF THE STATE OF TEXAS, Appellees**

---

**On Appeal from the 126th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-12-002272**

---

## OPINION

Appellants Louis Patino, D.C.; Stephen Wilson, M.D.; and Gary Craighead,

D.C. (the doctors) challenge the trial court's dismissal of their claims for lack of jurisdiction against appellees Texas Department of Insurance-Division of Workers' Compensation (the Division); Commissioner Ryan Brannan (the Commissioner) and Dr. Donald Patrick; State Office of Administrative Hearings, Texas; Chief Administrative Law Judge Cathleen Parsley; Administrative Law Judge Tommy Broyles; the State of Texas; and the Texas Attorney General.[1] Concluding that the trial court properly dismissed the doctors' claims challenging final agency orders but erred in dismissing the doctors' constitutional and statutory interpretation challenges and ultra vires claims, we affirm in part and reverse and remand in part.

## *Background*

The doctors were excluded from the State's workers' compensation system approved doctor list by final agency orders of the Workers' Compensation Commission (the Commission) in 2004 and 2005 and by final agency order of the Division in 2007.[2] Exclusion from the approved doctor list prevents the doctors from treating patients under the workers' compensation system. Patino did not appeal. Wilson sought declaratory and injunctive relief in response to the 2005 order denying him admission to the approved doctor list. *Wilson v. Tex. Workers' Comp. Comm'n*, No. 03-04-00627-CV, 2008 WL 5264875, at *1 (Tex. App.—Austin Dec. 17, 2008, no pet.) (mem. op.). Wilson argued that the Commission

---

[1] The current commissioner has been substituted for his predecessor. *See* Tex. R. App. P. 7.2(a) ("When a public officer is a party in an official capacity to an appeal or original proceeding, and if that person ceases to hold office before the appeal or original proceeding is finally disposed of, the public officer's successor is automatically substituted as a party if appropriate.").

This case was transferred to our court from the Third Court of Appeals; therefore, we must decide the case in accordance with its precedent if our decision would be otherwise inconsistent with its precedent. *See* Tex. R. App. P. 41.3.

[2] Effective September 1, 2005, the Commission was abolished and reorganized under the Division. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607-08.

acted without authority in promulgating rules that allowed it to terminate the prior approved doctor list and exclude him from a new approved doctor list. *Id*. The trial court granted summary judgment in favor of the Commission, and the Third Court of Appeals affirmed. *Id*. Craighead also sought injunctive relief from the decision to exclude him from the approved doctor list. The trial court concluded, among other things, that Craighead failed to show a "property right to provide health care services in Texas' statutory workers' compensation system or that a constitutionally protected liberty interest [was] at issue" and denied Craighead's application for injunctive relief.

The Division subsequently initiated administrative proceedings against Patino and Craighead in the State Office of Administrative Hearings (SOAH), alleging that Patino and Craighead improperly provided care to or received remuneration from workers' compensation claimants after being denied admission to the approved doctor list. The doctors filed this lawsuit in July 2012, seeking to enjoin the administrative proceedings from going forward. The trial court denied injunctive relief.

Administrative law judges for the SOAH assessed administrative penalties against Patino and Craighead of $55,000 and $45,000, respectively. The doctors then amended their pleadings in this lawsuit to seek judicial review of the SOAH administrative law judges' orders.[3] Appellees filed pleas to the jurisdiction, which the trial court granted, dismissing all defendants and all claims for want of jurisdiction. The doctors then filed a motion for new trial, which the trial court denied. This appeal followed.

---

[3] The doctors sued the Division, the Commissioner, an employee of the Division, SOAH, two administrative law judges, the State, and the attorney general.

## *Discussion*

The doctors challenge the trial court's dismissal of their claims for want of jurisdiction, contending that (1) they can challenge the 2004, 2005, and 2007 final agency orders as void, (2) they can challenge the SOAH administrative law judges' final orders assessing penalties, (3) their constitutional challenges to the Workers' Compensation Act and to the Division's interpretation of the Act were timely and could be brought in the trial court, (4) they were entitled to bring a declaratory judgment action to determine their rights under the statute, and (5) they are entitled to injunctive relief to prevent "continued wrongs from occurring," "any proven unlawful acts," and "yet to be proven unconstitutional acts."[4] Appellees contend the trial court lacked jurisdiction over this action because (1) the doctors may not collaterally attack final agency decisions, (2) Patino and Craighead did not wait for the administrative orders to become final before filing suit, and (3) Wilson has no administrative actions to appeal.

We review a plea challenging the trial court's jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the

---

[4] The Workers' Compensation Act establishes a "comprehensive scheme whereby employees who are covered by workers' compensation insurance and incur 'compensable' injuries are provided the exclusive remedy of 'workers' compensation benefits,'" including "medical benefits" (i.e., "all health care reasonably required by the nature of the injury as and when needed"), to be paid by the insurance carrier that covers each worker. *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co.*, 416 S.W.3d 11, 15 (Tex. App.—Austin 2013, no pet.) (citing Tex. Lab. Code §§ 401.011(10), (31), 406.031, 408.001, 408.021). In turn, the Act "gives a health care provider who provides medical benefits . . . the right to reimbursement from the workers' compensation carrier that covers the employee." *Id.* (citing Tex. Lab. Code § 408.027(a)). The Act is codified in chapters 401 through 506 of the Labor Code. *See* Tex. Labor Code §§ 401.001-506.002.

plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id*. If the issue is one of pleading sufficiency, the plaintiffs should be afforded the opportunity to amend unless the pleadings affirmatively negate jurisdiction. *Id*. at 227.

## I.    Collateral Attacks on Final Agency Orders

The doctors contend that they can challenge the 2004, 2005, and 2007 final agency orders as void. Under the Administrative Procedures Act (APA), a person who is aggrieved by a final decision in a contested case and who has exhausted his administrative remedies is entitled to judicial review. *See Castillo v. State*, No. 03-11-00503-CV, 2012 WL 3793276, at *3 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.) (citing Tex. Gov't Code §§ 2001.171-.178). Wilson and Craighead both exhausted their administrative remedies and sought judicial review of the final agency orders, and those appeals were finally disposed. Patino did not perfect judicial review of the final agency order against him. Accordingly, all three orders are final and unappealable. *See id*. at *4.

A trial court generally does not have jurisdiction to review an administrative order that is final and unappealable. *See Castillo*, 2012 WL 3793276, at *3–4; *Jolly v. State*, 856 S.W.2d 859, 861 (Tex. App.—Austin 1993, writ denied). Accordingly, such orders ordinarily are immune from collateral attack. *Peterson v. Tex. Bd. of Chiropractic Examiners*, No. 03-97-00652-CV, 1998 WL 333267, at *3 (Tex. App.—Austin June 25, 1998, pet. denied) (mem. op., not designated for publication). A final order that is valid on its face similarly is not subject to collateral attack. *Id*.; *Jolly*, 856 S.W.2d at 861. Exceptions to this rule apply when an order involves fundamental error or when an agency acts beyond its statutory authority. *Peterson*, 1998 WL 333267, at *3.

The doctors contend that the final orders are void because, according to the

doctors, they were issued by the medical advisor, who lacked authority to remove the doctors from the approved doctor list. The doctors assert that before September 2005, the Commission could take action only by a majority vote of its members, and the failure to do so rendered the 2004 and 2005 orders void. *See* Tex. Labor Code § 402.004(a) (repealed 2005) ("The commission may take action only by a majority vote of its membership."). As to the 2007 order, the doctors assert that only the Commissioner could issue the order. *See id*. § 402.072 (recodified at Tex. Labor Code § 415.0215) ("Only the commissioner may impose . . . a sanction that deprives a person of the right to practice before the division or of the right to receive remuneration under this subtitle for a period exceeding 30 days.").

Although the final orders are signed by the medical advisor, they do not reflect that the Commission failed to take a vote before removing Wilson and Patino in 2004 and 2005 from the approved doctor list or that the Commissioner of the Division failed to remove Craighead in 2007. In the 2004 order, the medical advisor notified Wilson that it was "the *Commission's* final decision to deny [him] admission to the Approved Doctor List." (Emphasis added). The 2005 order contains similar language addressed to Patino: "This letter serves as official notice that the Texas Workers' Compensation *Commission* . . . has denied you admission to its Approved Doctor List." (Emphasis added). As for the 2007 order, Craighead was notified that "the Texas Department of Insurance, Workers Compensation Division . . . denied [his] application for admission to its Approved Doctor List." Accordingly, these final orders are not inconsistent with the statutes' requirements and appear valid on their face. On the record before us, the orders are not subject to collateral attack. *See, e.g., Bedell v. State*, No. 03-16-00328-CV, 2017 WL 6756996, at *3 (Tex. App.—Austin Dec. 19, 2017, no pet.) (mem. op.); *Peterson*, 1998 WL 333267, at *4; *Jolly*, 856 S.W.2d at 861.

6

## II.    SOAH Administrative Orders

The doctors also contend that they can challenge the SOAH administrative law judges' final orders assessing penalties. Appellees contend that the trial court never acquired subject matter jurisdiction over the appeal of the orders assessing penalties because Patino and Craighead did not exhaust their administrative remedies before filing suit. Instead, they filed suit to enjoin the administrative process from going forward. Wilson joined the lawsuit even though he was not subject to any administrative action. The doctors contend that the trial court acquired jurisdiction over the issue when they amended their petition after the penalties were assessed.

The Third Court of Appeals has held that when the APA applies, it requires exhaustion of remedies before seeking judicial review in the courts. *Marble Falls Indep. Sch. Dist. v. Scott*, 275 S.W.3d 558, 564 (Tex. App.—Austin 2008, pet. denied); *see also* Tex. Gov't Code §§ 2001.001-.903 (APA). The parties agree that the APA applies here, and indeed, unless otherwise provided, the APA's judicial review procedures apply to agency governed proceedings. *See Marble Falls ISD*, 275 S.W.3d at 564 (citing Tex. Gov't Code §§ 2001.001, .051-.178).

In the *Marble Falls ISD* case, a group of parents of school aged children sought to detach their land from Marble Falls ISD and annex it to Lake Travis ISD. *Id*. at 560. The Commissioner of Education granted their petition. *Id*. Marble Falls ISD filed suit, seeking a declaratory judgment, trial de novo, and injunctive relief against the commissioner's decision. *Id*. The parents filed pleas to the jurisdiction asserting that because Marble Falls ISD filed its petition before the commissioner made a final ruling on Marble Falls ISD's motion for rehearing in the administrative proceeding, Marble Falls ISD had not exhausted its administrative remedies. *Id*. at 561. The trial court granted the pleas for want of jurisdiction. *Id*. In

affirming, the Third Court held that even though the commissioner denied the motion for rehearing during the pendency of the trial court case, the cause did not ripen. *Id*. at 565-66.

The court of appeals addressed "if and when a jurisdictional defect created by a failure to exhaust administrative remedies may 'ripen' and whether such jurisdictional defects would require abatement rather than dismissal." *Id*. at 565. Marble Falls ISD argued that abatement or an opportunity to replead would be the appropriate remedy. *Id*. The court noted, "If an administrative body has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the decision. Until the party has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss those claims without prejudice to refiling." *Id*. (quoting *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006)). Thus, to seek judicial review, a party must be "aggrieved by a final decision" and must have "exhausted all administrative remedies available." *Id*. Because the trial court never had jurisdiction over the case, it could not abate it to allow time to cure or allow repleading. *Id*. at 566. Accordingly, Marble Falls ISD's failure to satisfy the jurisdictional prerequisite of awaiting a final decision before filing suit resulted in a lack of jurisdiction that could not be cured. *Id*. at 568.

Here, there is no dispute that the doctors filed suit before awaiting a final decision from the SOAH. Their amendment after the fact did not cure the trial court's lack of jurisdiction over the issue.[5] *See id*.; *see also Foster v. Teacher Ret. Sys.*, 273 S.W.3d 883, 891 (Tex. App.—Austin 2008, no pet.) ("In this case, the

---

[5] The APA was amended effective September 2015 to allow for "prematurely filed petition[s] . . . to initiate judicial review." *See* Tex. Gov't Code § 2001.176. The amended statute was not in effect when this lawsuit was filed and the SOAH administrative penalties were assessed.

trial court lacked jurisdiction over both defendants, and dismissal, not abatement to cure a timing issue, was appropriate.").

### III. Constitutional Challenges

The doctors also contend that the trial court has jurisdiction over their constitutional challenges to the Workers Compensation Act and their challenges to the Division's interpretation of the Act. Sovereign immunity implicates a trial court's jurisdiction and when applicable, precludes suit against a governmental entity. *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 75 (Tex. 2015). Sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief. *Id.* at 75-76. Similarly, immunity is waived as to suits challenging the governmental entity's interpretation of a statute. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010). In such suits, the proper party is the governmental agency. *See id.* at 634-35.

Lawsuits seeking "prospective injunctive relief against future agency orders based on the statutes and regulations" are thus appropriately brought against the governmental agency. *Patel*, 469 S.W.3d at 79. If the plaintiffs fail to plead a viable claim, however, the governmental defendants remain immune from suit. *Id.* at 77; *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011); *Spence v. State*, No. 03-17-00685-CV, 2019 WL 1868841, at *4 (Tex. App.—Austin Apr. 26, 2019, pet. denied) (mem. op.). Couching requested relief in terms of declaratory relief does not alter the underlying nature of the suit. *Spence*, 2019 WL 1868841, at *4.

**Viable Claim**. Applying these principles, we must determine whether the doctors pleaded a viable claim challenging the constitutionality of a statute or challenging governmental interpretation of any statute or ordinance, and we look to

the underlying nature of the claims to make this determination. *See id.*; *see also Scott-Nixon v. Tex. Higher Educ. Coordinating Bd.*, No. 03-10-00377-CV, 2012 WL 1582270, at *4 (Tex. App.—Austin May 4, 2012, no pet.) (mem. op.). In so doing, we must examine the alleged facts. *See Chisholm Trail SUD Stakeholders Grp. v. Chisholm Trail Special Util. Dist.*, No. 03-16-00214-CV, 2017 WL 2062258, at *6 (Tex. App.—Austin May 11, 2017, pet. denied) (mem. op.).

The doctors argue on appeal that the "requirements of the Texas Workers' Compensation Act violate" their constitutional rights to property and liberty. *See* U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law."); Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."). The doctors contend they have a constitutional right "to be able to practice health care including treating injured workers in Texas when properly licensed by their respective boards without interference from the [Division]." *See Greene v. McElroy*, 360 U.S. 474, 492 (1959) ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment."); *see also Patel*, 469 S.W.3d at 74 (acknowledging constitutional right under Texas Constitution article I, section 19 to exercise one's occupation "free from unreasonable governmental interference").[6]

---

[6] As Justice Willett noted,

> The U.S. Supreme Court has repeatedly declared that the right to pursue a lawful calling "free from unreasonable governmental interference" is guaranteed under the federal Constitution, and is "objectively, deeply rooted in this Nation's history and tradition." A pro-liberty presumption is also hardwired into the Texas Constitution, which declares no citizen shall be "*deprived* of life, liberty, property, [or] privileges or immunities"—phrasing that indicates citizens already

The doctors allege in their live petition, "This suit . . . raises critical statutory rights of health care providers in Texas, including statutory interpretation, statutory conflicts, jurisdictional questions, and constitutional challenges." They allege that the Commissioner, the Division, and its "named officials and employees . . . exceeded their statutory authority by improperly, unlawfully, and impermissibly attempting to deny and continuing to enforce the denial and restriction of the statutory rights of [the doctors] under the Texas Workers' Compensation Act." They also allege, "The government and its official and its employees, the Defendants, are unreasonably interfering with the [doctors'] statutory and Constitutional rights to practice their professions and right to engage in business and property" and "the Defendants' actions have been and continue to be made through unlawful procedure and error of law and in violation of the Constitution." The doctors seek prospective injunctive relief (1) "to prohibit the application, use, and enforcement of the improper denial of the" doctors to the approved doctor list, (2) to abate "any further administrative proceedings before SOAH and the [Division]," and (3) to remove the doctor's names from the Division's website "as being disciplined and being denied to the [approved doctor list] until the legal issues in this lawsuit are resolved."

As the doctors point out, their claims are akin to claims brought by the plaintiffs in *Patel*. The State had begun regulating eyebrow threading, and the plaintiffs contended that cosmetology statutes and associated administrative rules were unreasonable as applied to eyebrow threading and violated their constitutional right "to earn an honest living in the occupation of one's choice free

---

possess these freedoms, and government cannot take them "except by the due course of the law of the land."

*Patel*, 469 S.W.3d at 93 (Willett, J., concurring) (citing *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997), and *Greene*, 360 U.S. at 492).

11

from unreasonable governmental interference." *Patel*, 469 S.W.3d at 74. The plaintiffs sought declaratory judgment that the statutes and regulations, as applied to them, violated the privileges and immunities and due course guarantees of the Texas Constitution. *Id*. They also sought a permanent injunction barring the State from enforcing the cosmetology scheme against them. *Id*. The supreme court reiterated the longstanding rule that sovereign immunity is "inapplicable in a suit against a governmental entity that challenges the constitutionality of a statute and seeks only equitable relief." *Id*. at 76. In such suits, the relevant governmental entities *must* "be made parties." *Id*. Because the threaders challenged the validity of statutes and regulations, the Texas Department of Licensing and Regulation and the Texas Commission of Licensing and Regulation, as the governmental entities "charged with overseeing individuals and businesses that offer cosmetology services," were not immune from the lawsuit. *Id*. at 74, 77.

Construing the pleadings liberally, *see Miranda*, 133 S.W.3d at 226, we conclude that in alleging the Act allows the Division to "unreasonably interfer[e]" with their rights "to practice their professions," rights "to engage in business," and rights to property, the doctors have alleged a viable claim that the Act violates the United States and Texas Constitutions. *See Patel*, 469 S.W.3d at 77 (holding claims that are properly pleaded are sufficiently viable to survive plea to jurisdiction). Our sister court has recognized the Act is a "comprehensive statutory framework" reflecting "painstaking Legislative economic and policy judgments as to the appropriate means of balancing the often-competing interests of participants to achieve a viable compensation system within constitutional limitations." *Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co.*, 416 S.W.3d 11, 39 (Tex. App.—Austin 2013, no pet.). The legislature vested the Division with the power and authority to promulgate rules necessary to implement and enforce the Act. *Lee v. Tex. Workers'*

12

*Comp. Comm'n*, 272 S.W.3d 806, 813 (Tex. App.—Austin 2008, no pet.) (citing Tex. Labor Code § 402.061).

Under the Act, the Division is authorized to develop and adopt requirements for admission to the approved doctor list. *Id*. at 814 (citing Tex. Labor Code § 408.023(a)). Compliance with those requirements makes a doctor eligible to be included on the list. *Id*. Only doctors approved by the Division can treat injured patients and receive payments under the workers' compensation system. *Id*. at 809 (citing Tex. Labor Code § 408.023), 814. Thus, the Division determines the basis on which a doctor may be admitted to the approved doctor list. *Id*. at 814. Because the Division is the governmental entity "charged with overseeing" which doctors are added to or removed from the approved doctor list, the Division is not immune from the doctors' challenges to the constitutionality of the Act. *See Patel*, 469 S.W.3d at 74, 77. The Division is the proper party to defend against these claims. *See id*.

**Standing**. The Division contends that the doctors lack standing to bring their constitutional claims because they "have not been asked to pay the assessed penalties or to provide a security bond" and thus have shown no harm. The standing doctrine identifies suits appropriate for judicial resolution. *Id*. at 77. Standing requires a real controversy between the parties that will be determined by the judicial declaration sought. *Id*. "[T]o challenge a statute, a plaintiff must [both] suffer some actual or threatened restriction under the statute" and "contend that the statute unconstitutionally restricts the plaintiff's rights." *Id*. Here, the doctors have suffered an actual restriction under the Act because the Division removed them from the approved doctor list under the statute and initiated regulatory proceedings against them. *See id*. at 78. Moreover, the doctors contend that the statute unconstitutionally restricts their rights to practice medicine. Accordingly, the

13

doctors have standing to bring their constitutional claims.[7] *See id*.

**Ripeness**. The Division also contends that the doctors' claims are not ripe because disciplinary actions against Patino and Craighead were still pending when the lawsuit was filed. Under the ripeness doctrine, courts "consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id*. Thus, we look to whether a case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Id*. Here, the threat of harm is more than conjectural, hypothetical, or remote because the doctors have been removed from the approved doctor list, have been disciplined for treating patients in the workers' compensation system, and have incurred penalties related to their treatment of such patients. At the time of filing their lawsuit, the doctors were subject to a real threat of additional proceedings that could result in more penalties and sanctions. The claims are ripe. *See id*.

**Redundant Remedies**. The Division also argues that the doctors' constitutional challenges are barred under the redundant remedies doctrine because the doctors could have obtained relief through a timely filed suit for judicial review of the SOAH orders. Under that doctrine, claims seeking a declaratory judgment are barred when the same claim could be brought through different channels. *Id*. at 79. But the available remedies on appeal from administrative findings are limited to reversal of the particular orders at issue. *Id*. The doctors seek more—they seek prospective injunctive relief against future agency orders and actions based on the statute. Accordingly, the redundant remedies doctrine does not apply. *See id*.

---

[7] The Division argues the doctors lack standing to challenge the constitutionality of the Workers' Compensation Act under the Texas open courts doctrine. *See* Tex. Const. art. I, § 13 ("All courts shall be open."). Because we hold that the doctors have standing to challenge the Act under the Fifth Amendment of the United States Constitution and article I, section 19 of the Texas Constitution, we need not address standing under the open courts doctrine.

**Proper Parties**. The doctors contend that the Commissioner and his predecessor, the SOAH and named administrative law judges, and the attorney general are also proper parties to the constitutional challenges and challenges to the Division's interpretation of the Act because these appellees are all interested parties. *See* Tex. Civ. Prac. & Rem. Code § 37.006(a) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."). We disagree.

In *Patel*, the supreme court held that the governmental entities "charged with overseeing individuals and businesses that offer cosmetology services" were the proper parties against whom to bring a constitutional challenge or challenge to the validity of a statute. 469 S.W.3d at 74, 77. As discussed above, we have concluded that the Division, as the governmental entity charged with managing the approved doctor list, is the proper party to the doctors' constitutional and statutory challenges. The doctors have not alleged that the other parties were responsible for overseeing the approved doctor list, so the doctors have not pleaded a viable claim against the other parties challenging the constitutionality or interpretation of the Act.[8] *See, e.g., Andrade*, 345 S.W.3d at 11 ("[T]he [government official] retains immunity from suit unless the [plaintiffs] have pleaded a viable claim."); *Spence*, 2019 WL 1868841, at *4 ("If the plaintiff fails to plead a viable claim, . . . the governmental defendant remains immune from suit.").

---

[8] Accordingly, we agree with the SOAH and administrative law judges that they are not proper parties to the doctors' declaratory judgment claims. *See Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) ("Governmental entities joined as parties may be bound by a court's declaration on *their* ordinances or statutes." (Emphasis added)). We also note that the attorney general "must . . . be served with a copy of the proceeding and is entitled to be heard . . . [i]n any proceeding [in which a] statute . . . is alleged to be unconstitutional." Tex. Civ. Prac. & Rem. Code § 37.006(b). But the statute does not require the attorney general to be named as a party in such proceedings.

## IV.  Ultra Vires Claims

The doctors also contend that their ultra vires claims are not barred by sovereign immunity. The Commissioner argues that he should not have been joined as a defendant because there is no allegation that he committed specific ultra vires acts.

A suit asserting that a government officer acted without legal authority or seeking to compel a governmental official to comply with statutory or constitutional provisions is an ultra vires suit and is not subject to pleas of governmental immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); *Lone Star Coll. Sys. v. Immigration Reform Coal. of Texas (IRCOT)*, 418 S.W.3d 263, 272 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Because these suits are not considered to be suits against the state, they must be brought against the allegedly responsible state actors in their official capacities, not against the state. *Heinrich*, 284 S.W.3d at 373. For the ultra vires exception to apply, the suit must allege and ultimately prove that the state official acted without legal authority or failed to perform a purely ministerial act, rather than attack the official's exercise of discretion. *Id.* at 372. A government official acts "without legal authority," and thus ultra vires, if he exceeds the bounds of his granted authority or acts in conflict with the law itself. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017).

The Commissioner contends that no specific ultra vires actions by him have been pleaded. We disagree. The doctors allege that the Commissioner acted beyond his "statutory authority and in violation of the Texas Workers' Compensation Act" in (1) removing the doctors from the approved doctor list without following the protocol set forth in the statute, (2) prohibiting the doctors from owning, being employed by, and investing in a healthcare facility in Texas,

16

and (3) wrongfully listing the doctors on the Division's website as being disciplined. As pleaded, the Commissioner is the "state agency head," and he purportedly violated the Act in taking the alleged actions described above. Although the doctors allege that the Division and others also committed these acts, the doctors' allegations implicate the Commissioner as the allegedly responsible government actor in his official capacity.[9] *See, e.g., Lone Star Coll. Sys.*, 418 S.W.3d at 272 (holding school chancellor in his official capacity was responsible government actor for ultra vires claims as chief executive officer of school system, interpreter of board policy, and employee who reported directly to board). We conclude that the doctors have alleged viable ultra vires claims implicating the Commissioner.[10] *See id.*

## *Conclusion*

We conclude that the trial court did not err in dismissing the doctors' challenges to the SOAH's final agency orders for lack of jurisdiction. The trial court, however, erred in dismissing the doctors' (1) claims against the Division challenging the constitutionality of the Workers' Compensation Act and the Division's interpretation of the Act, and (2) ultra vires claims against the Commissioner. We reverse the trial court's order dismissing these claims against

---

[9] The doctors also sued Dr. Donald Patrick. The doctors pleaded that Patrick is an employee of the Division but did not allege that Patrick was responsible for any ultra vires actions. Accordingly, the trial court did not err in dismissing the doctors' claims against Patrick. *See Patel*, 469 S.W.3d at 76 (noting for ultra vires exception to apply, claimant must allege a state official acted without legal authority or failed to perform a purely ministerial act). Similarly, the trial court did not err in dismissing the doctors' claims against the administrative law judges because the doctors did not allege the judges were responsible for any ultra vires actions. *See id.*

[10] We have noted that there is no "legal or policy reason" preventing a party from raising statutory challenges and ultra vires claims both in the same lawsuit. *See Lone Star Coll. Sys.*, 418 S.W.3d at 273. Accordingly, the doctors could bring their constitutional and statutory interpretation challenges against the Division while at the same time bringing their ultra vires claims against the Commissioner. *See id.*

17

the Division and the Commissioner and affirm the trial court's order dismissing all other claims against all other parties.

/s/    Frances Bourliot
Justice

Panel consists of Justices Christopher, Jewell, and Bourliot.